CLIDE WILLOUGHBY AND IDDO WILLOUGHBY *v.* B. L. POPE.

[58 South. 705.]

1. HOMESTEAD. *Fraudulent conveyance. Motive of transfer. Fraud. Actions. Evidence. Sufficiency. Crops.*

The owner of an exempt homestead has the right to convey the same and the motives moving him do not in any way affect the title of the grantee.

2. FRAUD. *Evidence. Sufficiency.*

Fraud is not established by raising a mere suspicion.

3. CROPS. *Title. Judgment lien.*

Working a crop does not give the worker title to the crop, and does not subject the product of his labor to the judgment lien of his creditor.

APPEAL from the circuit court of Pike county.

HON. D. M. MILLER, Judge.

Suit by B. L. Pope against D. M. & F. M. Willoughby in which Clide and Iddo Willoughby intervene as claimants. From a judgment for plaintiff, claimants appeal. The facts are fully stated in the opinion of the court.

*Clem V. Ratcliff,* for appellant.

We contend that the judgment should be reversed, and judgment entered here for the claimants for the reason that the plaintiff in execution did not show by the testimony that the cotton was subject to the execution and the levy.

We submit that the testimony is entirely insufficient to justify the verdict of the jury and it is contrary to the law. The verdict should have been for the claimants on the facts. We invite a careful reading of the transcript for this particular feature of this brief.

The second instruction for plaintiff is more painful error still, and is squarely in conflict with the whole tes-

timony in the case. That instruction tells the jury the
startling law, that although they may believe from the
testimony that the conveyance from D. M. & M. F. Wil-
loughby to C. M. & C. J. Willoughby, the claimants,
was a *bona fide,* honest transaction, and that the land
was the property of claimants, and that the cotton was
raised on their land, yet if they believe that D. M. or
M. F. Willoughby, or either of them raised the cotton
and it was their property at the time of the levy of the
execution, that then the jury should find for the plaintiff,
Pope. This instruction is incomplete, and inconsistent
with the facts proven and contrary to the law. It elimi-
nates from the consideration of the jury all the rights
of the landlords as to their liens against the agricultu-
ral products of their tenants. The testimony in the case
shows, and the instruction admits that the claimants
were the *bona fide* landlords, and that the cotton was
raised on their land. It then goes on to say if you be-
lieve under that condition that the father and mother,
D. M. & M. F. Willoughby, or either of them owned the
cotton at the time of the levy, etc.  .  .  . Under the
instruction and the testimony, D. M. & M. F. Willoughby
could not possibly have owned the cotton except they
had been the tenants of claimants, and if they were ten-
ants of claimants, then claimants as landlords certainly
had a valid, superior and paramount lien for supplies
to their tenants for every thing furnished to make the
cotton. The proof shows (see testimony of D. M. and
Clide and Iddo Willoughby and J. L. Jackson) that
claimants, or at least Clide Willoughby, did supply every
thing necessary for the making of the cotton from C. At-
kinson Sons Co. in Summit. Then of course he had his
paramount lien for these supplies which a mere judg-
ment lien cannot defeat. We say therefore that the in-
struction omitted the qualifying clause allowing to the
claimants their legal rights under their landlord's lien.
The instruction is clearly and fatally erroneous for this

omission. The testimony abundantly justifies this saving clause in the instruction for the claimants as landlords.

The instruction admits the claimants to be *bona fide,* honest landlords, and that the cotton was raised on their land. Then it, the cotton, could only be D. M. Willoughby's by tenancy of the claimants, and the proof comes in here and says that the claimant furnished the supplies to make the crop of cotton, and the law comes in here and says if this is so, the claimant (landlord) has a paramount lien, and the instruction as written excludes this idea of this fact from the jury and is fatal to a vested, material, and paramount right of claimant.

*Cassedy & Butler,* for appellee.

It would make no difference whether the land belonged to the boys or not if the old man made the crop. The only question that was presented was as to who made the cotton, and to whom did it belong. The only claim that the boys made was that they raised it. They did not claim that there was any kind of a contract by which the old man was to make it for them. So the question is pure and simple, "who made it?" The old man and Clide testified that Clide made it. As against this we have the testimony of the neighbors, passing there almost daily during the crop season, and old man Willoughby and the little boys, not the claimants, were working the crop, with mules that belonged to him. That Clide was never working the crop, and to the contrary he was going to school part of the time, and working at a sawmill part of the time. When the officer levied on the cotton he found it in the possession of Martin Willoughby, the execution debtor, this alone makes a *prima facie* case under the law. Under these circumstances, can the court say as a matter of law that this evidence was not sufficient to go to the jury, and does not support the verdict? We say it was properly submitted to

the jury, and they have determined that it was the property of the execution debtors, and ought to stand.

Cook, J., delivered the opinion of the court.

B. L. Pope, appellee, obtained a judgment against D. M. and F. M. Willoughby, and had execution levied upon six bales of cotton, which were claimed by Clide and Iddo Willoughby, appellants. The claimants' issue was made up and the case submitted to the jury in the circuit court to which the execution was returnable. The verdict of the jury was for the plaintiff in execution, and claimants appeal to this court.

The defendants in execution were the father and mother of the claimants, and while the original suit was pending for trial, and a short time before the term of court at which the trial was to be had, they conveyed forty acres of land to their sons, Clide and Iddo, which forty acres was a part of their homestead. The six bales of cotton, the subject of contest, were raised on this land. It was claimed that the deed made by their parents to appellants was made for the purpose of defrauding plaintiff in execution, and upon this issue the case was fought out. Although the land conveyed, and upon which the cotton was grown, was conceded to be exempt from execution, yet it was insisted that the old people, in anticipation of the judgment subsequently rendered against them, conveyed this land to their children in order to prevent the judgment creditor from levying an execution upon the products thereof not yet in existence, but which, in all probability, would be planted, cultivated, matured, and severed from the soil.

The contention of plaintiffs is untenable. The owners of the land had a legal right to convey the title to the land, and their creditors had no right to complain in this action. The judgment was not a lien on the homestead; and while the judgment creditors might have secured a right to levy execution on the crops produced on

the homestead after such crops were severed from the soil, nevertheless the debtor and his wife had a perfect right to sell the homestead, even though they did so to prevent the debtor from collecting his claim in this manner. It will not do to say that a conveyance of exempt property is fraudulent and void as to creditors, because the exemptionist anticipated that creditors would be able, at some time in the future, to enforce the collection of their claims out of the increase of the exempt property. The land was exempt, and the motives moving the exemptionists to part with the title do not in any way affect the title of the grantees. To use a common expression, it was none of appellee's business what the Willoughbys did with their homestead.

It was also claimed that the crops were produced by the labor of the father, and consequently he owned the six bales of cotton. This view was not supported by the evidence. Circumstances were given in evidence which might have raised a suspicion; but suspicion does not arise to the dignity of proof. It has grown to be the fashion to view the acts of our fellowmen with suspicion and distrust. According to the tenets of this cynical school of thought, fraud should be presumed wherever fraud is suggested. This transitory mental attitude does not meet with the approval of this court, and, as it appears to us this rule of action was adopted as a rule of law upon the trial of this case, we cannot approve the verdict of the jury upon this branch of the case.

Working the crop does not give the worker title to the crop, and does not subject the product of his labor to the judgment lien of his creditors. So, if the evidence tended to prove the contention of appellee, it does not follow that the jury was authorized to find a verdict in his favor.

For the reasons assigned, the case is reversed and remanded.

*Reversed and remanded.*

*Suggestion of error filed and overruled.*